IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 26-cv-0355-WJM

ALEX ARMANDO MARTINEZ-ORELLANA,

    Petitioner,

v.

ROBERT HAGAN, in his official capacity as Field Office Director, Denver Field Office, Immigration and Customs Enforcement, *et al*.

    Respondents.

## ORDER GRANTING HABEAS CORPUS PETITION

Before the Court is Petitioner Alex Armando Martinez-Orellana's Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1), and Motion for Temporary Restraining Order and/or Preliminary Injunction ("Motion") (ECF No. 2). Respondents Robert Hagan, in his official capacity as Field Office Director of the Denver Field Office of U.S. Immigration & Customs Enforcement ("ICE"); Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility; Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security; and Pamela Bondi, in her official capacity as Attorney General of the United States Department of Justice (collectively, "Respondents" or "the Government"), filed a response. (ECF No. 10.) Martinez-Orellana filed a reply at the Court's direction. (ECF No. 13.)

For the following reasons, the Petition is granted and the Motion is denied as moot.

## I.  BACKGROUND

This case involves an all too familiar fact pattern: Martinez-Orellana is a non-citizen who has lived in the United States for approximately 18 years.  (ECF No. 1 at 5.)  He has "strong ties to the community," including being the parent of two U.S. citizen children, "one of whom has a medical issue that is under treatment."  (*Id.*)  Martinez-Orellana has no "criminal history that would subject him to mandatory detention."  (*Id.*)

Despite all this, the Government has detained Martinez-Orellana pursuant to 8 U.S.C. § 1225—not 8 U.S.C. § 1226—at the Denver Contract Detention Facility in Aurora, Colorado, without the opportunity to post bond.  (*Id.*)

Martinez-Orellana now challenges the legality of his detention.

## II.  LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws...of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

### III. ANALYSIS

Martinez-Orellana contends that his mandatory detention under section 1225 violates the Immigration and Nationality Act ("INA"), regulatory guidance, the Administrative Procedure Act, and his Fifth Amendment Due Process rights. (*See generally* ECF No. 1.) He also contends that Respondents violated his due process rights by failing to tender his Form I-286 to the Immigration Judge ("IJ") at his custody redetermination hearing, which prompted the IJ to find no jurisdiction to conduct that hearing. (ECF No. 13 at 3.) As a result, Martinez-Orellana seeks immediate release or, alternatively, a bond hearing pursuant to section 1226(a). (*Id.* at 23.)

### A. SECTIONS 1225(b) AND 1226(a)

The Government submits that "[t]he central legal issue presented in this case concerns whether a noncitizen who is present in the United States and has not been admitted or paroled is subject to mandatory detention by U.S. Immigration and Customs Enforcement ("ICE") under 8 U.S.C. § 1225(b)(2), or whether such a noncitizen is entitled by § 1226(a) to seek a bond hearing." (ECF No. 10 at 1–2.) The Government further submits that the particular facts of this case are not germane to this central legal issue. (*Id.* at 2.) On the contrary, the Government acknowledges: "This issue is not materially different from an issue this Court has resolved in a prior ruling in another case." (*Id.* (citing *Morales Lopez v. Baltazar*, 2026 WL 25161 (D. Colo. Jan. 5, 2026).)

In *Morales Lopez*, the Court made the following very clear: "Like dozens of other federal district courts across the country, including in this Circuit, the Court concludes that Morales Lopez's detention is properly governed by 8 U.S.C. § 1226(a), not 8 U.S.C.

3

§ 1225(b)(2)(A)." *Id.* at *4 (citing *Nava Hernandez v. Baltazar, et al.*, 2025 WL 2996643, at *4 (D. Colo. Oct. 24, 2025)).)  The *Morales Lopez* case involved facts substantially similar to those at issue in Martinez-Orellana's case.  *See generally id.*

Then, only a week or so later, the Court fleshed out the reasoning behind this ruling in *Garcia Abanil v. Baltazar*, — F.Supp.3d —, 2026 WL 100587, at *4 (D. Colo. Jan. 14, 2026).  The Court set up the issue presented as follows:

> [S]ince *Yajure Hurtado*, many lawsuits have been filed challenging Respondents' recent practice of subjecting all noncitizen immigrants present in the United States to mandatory detention pursuant to § 1225(b)(2)(A).  As in many of those previously filed actions, Garcia Abanil alleges here that his continued detention under 1225(b)(2)(A) violates the INA, as well as his substantive due process rights.  (ECF No. 1.)  The Court analyzes each of these claims below.  Ultimately, it joins the many federal courts across the country that have been faced with virtually identical challenges in concluding that Garcia Abanil is subject to detention only under § 1226(a)—not § 1225(b)(2)(A)—and his continued detention without an individualized custody determination accordingly violates his constitutional right to due process.

2026 WL 100587, at *4.

The Court held in that case:

> The Court, like numerous other courts presented with this very same question of statutory interpretation, agrees with Garcia Abanil. 'The weight of authority interpreting § 1225 has recognized that 'for section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.' *Loa Caballero v. Baltazar,* 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025) (quoting *Martinez v. Hyde,* 2025 WL 2084238, at *2 (D. Mass. July 24, 2025) (internal citations omitted)).
>
> . . .

4

> At bottom, '[n]oncitizens who are just 'present' in the country . . ., who have been here for years upon years and never proceeded to obtain any form of citizenship[,] . . . are not 'seeking' admission.' *Lopez-Campos*, 797 F. Supp. 3d at 781.  And "[a]s § 1225(b)(2)(A) applies only to those noncitizens who are actively 'seeking admission' to the United States, it cannot, according to its ordinary meaning, apply to [persons who have] already been residing in the United States for several years.' *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025).  Put another way, noncitizens in Garcia Abanil's position, who entered the United States many years ago, are not 'seeking admission' to the United States but are instead "seeking to remain in the United States.'  *Lepe v. Andrews*, — F. Supp. 3d —, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025); *see also J.G.O. v. Francis*, 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025) ('[S]eeking admission' requires an alien to continue to want to go into the country.  The problem, as [petitioner] points out, is that he's already here; you can't go into a place where you already are.' (emphasis in original)).

*Id.* at *4–5.

The Court did not, however, base its conclusion on the plain text of the controlling statutes alone.  The Court went on to observe that

> Respondents' proffered interpretation of § 1225 appears facially inconsistent with related implementing regulations.  Though, "[w]ith *Chevron* laid to rest," the Court must "follow the Supreme Court's charge to 'exercise independent judgment' in interpreting the relevant statutory language," *Rangel-Fuentes v. Bondi*, 155 F.4th 1138, 1143 (10th Cir. 2025) (internal citation omitted), courts may nonetheless 'seek aid from the interpretations of those responsible for implementing particular statutes,' *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).  "[I]nterpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning."  *Id.*

> As relevant here, the implementing regulation for § 1225(b) states that 'any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act.'  8

5

> C.F.R. § 235(c)(1) (emphasis added). In this way, "[t]he regulation appears to contemplate that applicants seeking admission are a subset of applicants 'roughly interchangeable' with 'arriving aliens.' *Cordero Pelico v. Kaiser*, 2025 WL 2822876, at *11 (Oct. 3, 2025) (quoting *Martinez*, 2025 WL 2084238, at *6) (emphasis in original). An 'arriving alien' is defined under the regulatory scheme as 'an applicant for admission coming or attempting to come into the United States at a port-of-entry.' 8 C.F.R. § 1.2. 'This plainly does not describe petitioners,' like Garcia Abanil, who already 'reside in the United States.' *Kaiser*, 2025 WL 28227876, at *11.

*Id.*

Finally, the Court observed that Garcia Abanil's illegal detention violated his substantive due process rights. *See id.* at 6 ("Here, the parties' arguments appear, at least implicitly, to acknowledge that Garcia Abanil's due process claim rises and falls with the Court's determination of whether he is detained pursuant to § 1225(b)(2)(A) or § 1226(a)."). The Court expounded: "[B]ecause Garcia Abanil is statutorily entitled under § 1226 to more process than he has thus far received, his continued detention without an individualized bond hearing necessarily violates his Fifth Amendment right to due process." *Id.*; *cf. Lopez Benitez*, 795 F. Supp. 3d at 495 (concluding, at least as it pertains to the first factor set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), that "the facts clearly demonstrate[d] that [petitioner] was 'entitled to more process than he received' pursuant to § 1226(a) and its implementing regulations" and thus "a violation of [petitioner's] 'liberty interest is clearly established' here").

The Government "respectfully disagree[s] with th[ese] ruling[s]." (ECF No. 10 at 2.) Nevertheless, "Respondents acknowledge that until the Tenth Circuit rules on this issue, this Court's prior ruling on this issue would lead the Court to reach the same result here if the Court adheres to that decision, as the facts of this case are not

6

materially distinguishable from that case for purposes of the Court's decision on the legal issue of whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)." (*Id.* at 3.) As a result, "while Respondents do not consent to issuance of the writ and reserve the right to appeal, in order to conserve judicial and party resources," they submit that they have nothing to add beyond the arguments the undersigned has already fully considered and rejected elsewhere. (*Id.*)

The Court sees no basis to depart from the extensive reasoning outlined in its published decision in *Garcia Abanil*. Martinez-Orellana properly falls under section 1226(a). As such, the Court readily concludes that Respondents have violated his statutory and constitutional rights by arguing otherwise and denying him an opportunity to post bond.

## B. RESPONDENTS' REFUSAL TO ISSUE FORM I-286

Were this violation not enough, however, this case presents yet another troubling issue: The IJ found no jurisdiction to conduct a custody redetermination hearing based on Respondents' refusal to tender Martinez-Orellana's Form I-286, titled "Notice of Custody Determination" ("the Form"), to the IJ during that proceeding. (ECF No. 13 at 3.) The Form readily establishes that ICE had initially determined that Martinez-Orellana was subject to detention (despite the fact that the Form effectively invokes 8 U.S.C. § 1226(a) in doing so). (ECF No. 1-5.) The Form even explicitly lists the "Date and Time of *Custody Determination*." (*Id.* (emphasis added).) One can see for themselves below:

> Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be:
>
> ☒ Detained by the Department of Homeland Security.
>
> ☐ Released (check all that apply):
> ☐ Under bond in the amount of $ _____
> ☐ On your own recognizance.
> ☐ Under other conditions. [Additional document(s) will be provided.]
>
> BURTON, J. 10123                    12/16/2025 8:38 AM
> Name and Signature of Authorized Officer       Date and Time of Custody Determination
>
> Deportation Officer          ICE-ERO - Cheyenne, WY Sub-Office 7052 Commerce Circle, Suite 130
>                              307-432-7444 CHEYENNE, WY US 82007
> Title                                            Office Location/Address

(*Id.*)

The Form then instructed Martinez-Orellana that he "may request a review of this custody determination by an immigration judge." (*Id.*)

> You may request a review of this custody determination by an immigration judge.
> ☒ I acknowledge receipt of this notification, and
> ☐ I **do** request an immigration judge review of this custody determination.
> ☐ I **do not** request an immigration judge review of this custody determination.
>
> X  REFUSED TO SIGN                12/16/2025
> Signature of Alien                    Date

(*Id.*)

Despite this "instruction," Respondents refused to issue the Form to the IJ at the custody redetermination hearing. As a result, the IJ found that "it does not have jurisdiction to redetermine bond . . . ." (ECF No. 1-3 at 2.) In the IJ's words: "DHS has not yet determined bond by issuing a Form I-286, such that there is no bond for this Court to redetermine." (*Id.*)

The Court finds Respondents' refusal to tender the Form at the redetermination

8

hearing—and the IJ's finding of no jurisdiction based on this refusal[1]—to be patently absurd and undertaken in bad faith.  Although Respondents did not tender the Form at the redetermination hearing, they clearly had already initially determined that Martinez-Orellana was subject to detention.  If the images reproduced above did not make that clear, the fact that Martinez-Orellana was being held in detention at the time of the redetermination hearing, seeking redetermination so that he could be released from said detention, should have swiftly cured the IJ's actual or contrived confusion on this point.

No reasonable person could have possibly harbored any doubt that Respondents had already previously made an initial determination that he was subject to detention.  Therefore, the IJ plainly had the authority to reconsider that initial determination as contemplated under 8 C.F.R. § 1003.19, notwithstanding the fact that Respondents refused to formally present the Form to the IJ.  In the Court's view, Respondents and the IJ deprived Martinez-Orellana of his due process rights by arguing and concluding otherwise.

Tellingly, Respondents do not even try to defend the IJ's finding of no jurisdiction based on this failure-to-tender-Form I-286 issue.  (*See generally* ECF No. 10.)  Respondents instead maintain that Martinez-Orellana is subject to mandatory detention under section 1225.  (*Id.*)  But this argument is not at all responsive to the IJ's

---

[1] Martinez-Orellana acknowledges that "[i]t is unclear if the immigration judge knew that the I-286 Notice of Custody Determination had been filed in the removal proceedings docket." (ECF No. 1 at 6 n.1.)  Still, this form is not the only evidence on which an IJ should be able to reasonably rely in evaluating whether DHS has made an initial custody determination.  An immigrant's detention status should generally suffice in itself.  Here, Martinez-Orellana was clearly detained.  So why else would he be seeking a custody redetermination?

jurisdiction determination, which was grounded on the Government's perfidious refusal to tender Martinez-Orellana's Form I-286 to that tribunal.  On account of Respondents' failure to respond—let alone develop in any meaningful manner an argument to the contrary—to the Form issue raised by Petitioner, the Court deems that portion of the Petition to be confessed.  *See Ihor D., v. Noem*, 2026 WL 146507, at *1 (D. Minn. Jan. 20, 2026) (granting relief where Respondents did not oppose the petition); *see also United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (concluding that cursory argument not meaningfully developed by any analysis or citation is deemed waived).

In these circumstances—where Respondents have clearly violated Martinez-Orellana's due process rights by depriving him of the administrative process to which he is entitled—the Court concludes that immediate release is warranted.  More to the point, the Court holds that, on these facts, immediate release is indeed the only form of relief it can grant that will meaningfully and effectively cure the Government's flagrant deprivation of Martinez-Orellana's constitutional rights.  *See J.U. v. Maldonado*, — F. Supp. 3d —, 2025 WL 2772765, at *10 (E.D.N.Y. Sept. 29, 2025) ("Given the deprivation of Petitioner's liberty, formerly granted and approved by Respondent, *the absence of any deliberative process prior to or contemporaneous with the deprivation*, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy.") (emphasis added).

## IV.   CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 7) is MADE ABSOLUTE and Martinez-Orellana's Petition (ECF No. 1) is GRANTED;

10

2. The Court GRANTS this relief to Petitioner pursuant to Claims 1, 3, 4, and 5 of his Petition.  The Court does not reach the merits of the other claims set forth in the Petition;

3. The Motion is DENIED AS MOOT (ECF No. 2);

4. **By no later than this Monday, February 16, 2026**, the Government shall IMMEDIATELY RELEASE Martinez-Orellana on his own recognizance, along with all his personal belongings;

5. No onerous conditions of release shall be unilaterally imposed by Respondents on Martinez-Orellana, including without limitation mandating that he wear GPS monitoring, submit to mandatory reporting, or have his movements otherwise restricted;

6. Respondents are hereby ENJOINED from removing or transferring, or causing to remove or transfer, Martinez-Orellana from the District of Colorado while his Petition remains pending;

7. Should Martinez-Orellana believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, *see Daley v. Ceja*, 158 F.4th 1152 (10th Cir. 2025), he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **March 2, 2026**.  The Government shall file a response by no later than **March 18, 2026**, and Martinez-Orellana shall file a reply by no later than **March 25, 2026**; and

8. Judgment shall enter in Martinez-Orellana's favor and against the Government on **February 27, 2026,** UNLESS prior thereto the Court is informed that the Government has failed to fully and timely comply with the terms of this Order.

Dated this 13th day of February, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge