**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-0355-WJM

ALEX ARMANDO MARTINEZ-ORELLANA,

Petitioner,

v.

GEORGE VALDEZ, in his official capacity as Field Office Director, Denver Field Office, Immigration and Customs Enforcement, *et al*.

Respondents.

---

**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR FEES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

---

Before the Court is Petitioner Alex Armando Martinez-Orellana's Motion for Fees Pursuant to the Equal Access to Justice Act ("Motion"). (ECF No. 27). Respondents George Valdez[1], in his official capacity as Field Office Director of the Denver Field Office of U.S. Immigration & Customs Enforcement ("ICE"); Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility; Markwayne Mullin[2], in his official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"); and Todd Blanche[3], in his official capacity as Attorney General of the United States Department of Justice (collectively, "Respondents" or "the Government"), filed a

---

[1] George Valdez replaced Robert Hagan as Field Office Director of the Denver Field Office of U.S. Immigration and Customs Enforcement.

[2] Markwayne Mullin replaced Kristi Noem as Secretary of the U.S. Department of Homeland Security.

[3] Todd Blanche replaced Pamela Bondi as Attorney General of the U.S. Department of Justice.

response. (ECF No. 30.) Martinez-Orellana filed a reply. (ECF No. 31.)

For the following reasons, the Motion is granted in part and denied in part.

## I. BACKGROUND

In January 2026, Martinez-Orellana filed a Petition for Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2241 challenging the legality of his continued civil immigration detention. (ECF No. 1.) The Court granted the Petition and ordered his immediate release from detention. (ECF No. 14 at 11.) By the same Order, the Court also granted Martinez-Orellana leave to file a motion for attorney's fees to the extent he believed that he had a good faith basis to seek them under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (*Id.*)

Final judgment entered in Martinez-Orellana's favor. (ECF No. 18.) Martinez-Orellana then filed a motion to enforce judgment in which he "reported that Immigration and Customs Enforcement (ICE) only returned 12 of the 950 dollars that he had in his wallet when he was apprehended." (ECF No. 19 at 1.) After reviewing the parties' briefing on the motion to enforce, the Court denied the motion to enforce as moot because Martinez-Orellana confirmed the Government eventually fully reimbursed him for the missing amount. (ECF No. 47.)

After filing the motion to enforce judgment, he filed the Motion, seeking $28,860.00 in attorneys' fees incurred litigating the Petition under the EAJA. (ECF No. 27 at 15.) After filing the reply, Martinez-Orellana updated his request of the Court to award $32,136.96, to account for time spent writing the reply. (ECF No. 31 at 10.)

## II. ANALYSIS

### A. EAJA's Substantive Requisites

The EAJA prescribes that

> a court *shall* award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). The Tenth Circuit has held that "habeas actions challenging immigration detention are unambiguously 'civil actions.' " *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025). Thus, Martinez-Orellana is entitled to recover his attorneys' fees incurred in these habeas proceedings "if (1) the petitioner is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Morales Lopez v. Baltazar*, 834 F. Supp. 3d 1193, 1201 (D. Colo. 2026) (quoting 28 U.S.C. § 2412(d)(1)(A)).

The Government makes no arguments as to the EAJA's substantive requirements and notably fails to argue whether its position was substantially justified. (*See generally* ECF No. 30.) It has thus waived this issue. *See Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1280 (10th Cir. 2003) ("An issue is waived if it was not raised below in the district court."). As the Court has held previously, the Government's position, namely its insistence on detaining Martinez-Orellana pursuant to 8 U.S.C. § 1225, was not substantially justified. *See Morales Lopez*, 834 F. Supp. 3d at 1202; *Pal v. Lyons*, 2026 WL 2921074, at *2–*3 (D. Colo. Sept. 29, 2026); *see also Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1249 (10th Cir. 2026) ("Adopting the Government's interpretation of § 1225(b)(2)(A) would pose grave constitutional problems because

there is little justification, let alone a strong one, for detaining every one of the millions of unadmitted noncitizens in our country."). As none of the EAJA's substantive requisites are at issue, so the Court proceeds to consider the reasonableness of the fees to be awarded.

**B. Fee Amount**

The EAJA permits an eligible prevailing party to recover "*reasonable* attorney fees." 28 U.S.C. § 2142(d)(2)(A) (emphasis added). The determination of attorneys' fees is ultimately discretionary, especially given the district court's close understanding of the litigation and desire to avoid frequent appellate review of factual matters. *Rocky Mountain Wild v. Vilsack*, 2013 WL 3233573, at *4 (D. Colo. 2013). Nevertheless, the party seeking the award bears the burden of persuading the Court that the amount is reasonable. *Taylor v. Colvin*, 2015 WL 2375907, at *2 (D. Colo. May 15, 2015).

As noted above, Martinez-Orellana requests that the Court award him $32,136.96 in attorneys' fees. For the following reasons, the Court finds the award amount that Martinez-Orellana seeks to be grossly excessive.

Under the EAJA, fees ordinarily "shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The latter "special factor" exception "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988). "Examples of the former" include "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.* "Where such qualifications

are necessary and can be obtained only at rates in excess of the [statutory] cap, reimbursement above that limit is allowed." *Id.*

Importantly, "[i]ncomparable expertise, standing alone, will not justify the higher rate." *Vibra-Tech Eng'rs v. United States*, 787 F.2d 1416, 1420 (10th Cir. 1986). "Rather, the statutory cap may be exceeded only in the 'unusual situation' where the legal services rendered require specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles." *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990) (quoting *Vibra-Tech*, 787 F.2d at 1420).

Martinez-Orellana argues the Court should depart from the statutory cap and instead apply his attorneys' $600 hourly rate based on his attorneys' expertise in immigration law. Martinez-Orellana argues that his counsel's $600 per hour rate falls within market rates, pointing to the declaration of an immigration attorney with comparable experience to his own attorneys and several cases outside the Tenth Circuit awarding fees awards at higher hourly rates. (ECF No. 27 at 13; *see* ECF No. 27-3.) But the cases he cites are distinguishable. For one, only one of the cases involved a fee award in an immigration habeas action. *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009). As the Court will explain in its calculation of the award amount below, the Court need not consider *Nadarajah* because the Ninth Circuit there applied an enhanced hourly rate, whereas the Court will employ a different calculation method here.

He likewise argues

> This case required a specialized skill, namely expertise in both immigration law and procedure and federal habeas

> litigation. Immigration detention litigation in federal court requires mastery of a complex statutory and regulatory framework under the Immigration and Nationality Act, familiarity with rapidly developing detention jurisprudence, and the ability to litigate emergency matters against DHS and [the Executive Office for Immigration Review] on compressed timelines.

(ECF No. 27 at 11.)

Martinez-Orellana's attorneys in this matter, Jessica A. Dawgert and Sarah L. Vuong, declared that they have specialized expertise in immigration law. (*See* ECF Nos. 27-2 & 27-7.) And the Government does not appear to question their qualifications. Specifically, Martinez-Orellana argues "Ms. Dawgert was on the forefront of litigating the issue that has taken hold of many court dockets over the last several months and involves the statutory interpretation of a rarely-before used statute." (ECF No. 27 at 12.) He also notes that "[t]he majority of the habeas litigation surrounding the new immigration detention policies is conducted by a relatively small number of attorneys with expertise, a group that includes Ms. Dawgert." (ECF No. 27 at 13–14.)

But Dawgert's and Vuong's qualifications alone do not justify going above the statutory rate. In its Order granting the Petition, the Court "join[ed] the *many* federal courts across the country that have been faced with *virtually identical challenges* in concluding that [Petitioner] is subject to detention only under § 1226(a)—not § 1225(b)(2)(A)—and his continued detention without an individualized custody determination accordingly violates his constitutional right to due process." (ECF No. 14 at 4) (emphasis added) (quoting *Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1155 (D. Colo. 2026)). Given that the Court and federal courts across the country had already frequently encountered the key legal issue presented in the Petition, it confounds the Court that Martinez-Orellana would argue "this case . . . involved

'particular, esoteric nooks and crannies of immigration law' that were critical to obtaining the ultimate relief of immediate release . . . ." (ECF No. 27 at 11 (quoting *Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004)).)

Martinez-Orellana also argues that the Form I-286 issue in the Petition makes this case so unique as to justify his requested fee rate. Not so. Although the Court acknowledged that the immigration judge's decision "present[ed] yet another troubling issue," (ECF No. 14 at 7), the complexity of that issue does not rise to the level warranting such a distant departure from the EAJA's statutory cap. Indeed, in its analysis of that issue, the Court noted that "[n]o reasonable person could have possibly harbored any doubt that Respondents had already previously made an initial determination that he was subject to detention," (*id.* at 9), and that "Respondents have clearly violated Martinez-Orellana's due process rights by depriving him of the administrative process to which he is entitled." (*Id.* at 10.)

Moreover, the Court pauses to note that in the District of Colorado in 2026 immigration habeas petitioners have been represented by attorneys located throughout the country. Thus, the question of the availability of other counsel experts in the field of immigration law is not properly limited solely to members of the Colorado bar but should, in the Court's view, be considered in the context of what is, in effect, a nationwide immigration bar. And though the Court recognizes Martinez-Orellana's attorneys' experience in immigration law, in its discretion the Court will not award attorneys' fees in the amount sought in the Motion.

As noted above, the Government does not contest that the Motion meets the EAJA's substantive requisites. Instead, the Government argues "the Court should: (1)

reduce lead counsel's rate to the statutory maximum rate; and (2) exercise its discretion to reduce excessive or unnecessary hours for a total fee award of $7,460.74." (ECF No. 30 at 1.) The Court agrees somewhat with the Government. While the Court views the requested amount to be excessive, the Court acknowledges that Martinez-Orellana's counsel are experienced immigration attorneys and that the litigation over the motion to enforce judgment complicated some of the legal issues presented. As such, the Court will not reduce the fee award to the amount the Government recommends.

The Government notes the Court may consider factors, such as whether counsel has exercised reasonable billing judgment, in determining fee awards. The point is well taken, as it appears Petitioner's attorneys have made no efforts here at exercising any billing judgment, reasonable or otherwise. "The fee applicant should exercise billing judgment with respect to the number of hours worked and billed. Billing judgment consists of winnowing hours actually expended down to hours reasonably expended." *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) (internal citations omitted). Petitioner's counsel have made no effort in exercising billing judgment, instead asking for enhanced fees at their typical hourly rate for 57.25 hours. (ECF No. 31 at 4.)

As an objective cross-check against Petitioner's fee request, the Court notes that, to date, the average fee it has awarded in prior immigration habeas cases is $6,182.74, with the average time expended in those cases by counsel for the prevailing petitioner being 27.8 hours. By contrast, Petitioner here seeks an award amount of

$32,136.96 in fees, *over 5 times* the average fee amount, on the basis of time expended of more than *double* the average cited above.

Accordingly, allowing for the additional time expended by counsel in her efforts to recover the cash owed to Martinez-Orellana in litigating the motion to enforce judgment, the Court, in its discretion, will reduce the fee request by 75%, resulting in a total fee award of $8,034.24.

## III. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. Petitioner's Motion for Attorney Fee's Pursuant to the Equal Access to Justice Act (ECF No. 27) is GRANTED IN PART and DENIED IN PART;

2. Martinez-Orellana is AWARDED attorneys' fees under the EAJA in the total amount of $**8,034.24**; and

3. The Government is ORDERED to make such payment in full to Martinez-Orellana by no later than **November 6, 2026.**

Dated this 2nd day of October, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge